IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**BRETT KEMNOW**                                                                   **PLAINTIFF**

V.                      NO. 4:21CV00312 BSM-PSH

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER of the**
**SOCIAL SECURITY ADMINISTRATION**[1]            **DEFENDANT**

### RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge Brian S. Miller. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I.**   **Introduction:**

Plaintiff, Brett Kemnow, applied for disability benefits on November 29, 2015. (Tr. at 94). In that application, she alleged disability beginning on October 24,

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

2014. *Id*. After conducting a hearing, the Administrative Law Judge (ALJ) denied Ms. Kemnow's application. (Tr. at 103). On October 4, 2019, the Appeals Council remanded the application for review by a second administrative law judge. (Tr. at 110-112). Specifically, the Appeals Council directed the ALJ to further consider Ms. Kemnow's mental impairments, allegations of symptoms, and RFC. (Tr. at 110-111).

A second ALJ conducted a hearing on March 5, 2020 (Tr. at 117), and he issued an unfavorable decision on March 27, 2020. (Tr. at 130). The Appeals Council adopted the ALJ's decision on February 9, 2021. (Tr. at 1-7). Thus, the ALJ's decision now stands as the final decision of the Commissioner, and Ms. Kemnow has requested judicial review.

For the reasons stated below, this Court should reverse the ALJ's decision and remand for further review.

## II. **The Commissioner's Decision:**

The ALJ found that Ms. Kemnow had not engaged in substantial gainful activity during the relevant time-period, which was October 24, 2014 through December 31, 2019 (the date Kemnow was last insured).[2] (Tr. at 120). At Step Two,

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in

the ALJ found that Ms. Kemnow had the following severe impairments: degenerative disc disease, fibromyalgia, obesity, anxiety disorder, depressive disorder, and posttraumatic stress disorder. *Id*.

After finding that Ms. Kemnow's impairments did not meet or equal a Listing (Tr. at 121-122), the ALJ determined that Ms. Kemnow had the residual functional capacity (RFC) to perform work at the light exertional level, with additional limitations: (1) she can perform work where interpersonal contact is limited, defined in this case as interpersonal contact requiring a restricted degree of interaction such as answering simple questions, responding appropriately to supervisors and coworkers, and interaction with the public that is infrequent and not considered to be an essential job duty; (2) she is able to perform work where the complexity of tasks can be learned by demonstration or repetition within 30 days, and that has few variables and requires little judgment; and (3) she can perform work when the supervision required is simple, direct, and concrete. (Tr. at 123).

The ALJ next found that Ms. Kemnow was unable to perform any of her past relevant work. (Tr. at 128-129). At Step Five, the ALJ relied on the testimony of a Vocational Expert (VE) to find that, considering Ms. Kemnow's age, education,

---

significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. at 129-130). Therefore, the ALJ found that Ms. Kemnow was not disabled. *Id*.

### III. Discussion:

    A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the

meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

  B. Ms. Kemnow's Arguments on Appeal

Ms. Kemnow contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She makes a variety of arguments, including that the ALJ did not give proper weight to medical opinions, that the ALJ did not properly evaluate Ms. Kemnow's subjective complaints, and that the ALJ did not fulfill his duty at Step Three. Specifically, Ms. Kemnow argues, the ALJ should have evaluated fibromyalgia under Listing 14.09, and at the very least, discussed that

evaluation. Ms. Kenmow alleges that the ALJ committed error by not doing so. The Court agrees.

Ms, Kenmow exhibited multiple tender points at various medical appointments, sufficient to cause her doctors to diagnose fibromyalgia. (Tr. at 661, 820, 1001-1005). She was prescribed Effexor, Tramadol, and Gabapentin for her illness, and Gabapentin helped to some degree. (Tr. at 660). But Ms. Kemnow still complained of general fatigue, muscle aches, poor sleep, difficulty concentrating, and problems with memory. (Tr. at 45-55, 659-661, 829-839). On some days, she spent 18 hours in bed. (Tr. at 28). Treatment plans were conservative, including recommendations to exercise and stretch. (Tr. at 660-661, 779-780).

The disability determination services medical experts discussed Ms. Kenmow's diagnosis and symptoms, and they found fibromyalgia to be a chronic severe impairment. (Tr. at 60-69, 83-88). The ALJ also found it to be a severe impairment at Step Two. (Tr. at 120).

The ALJ said at the hearing that Ms. Kemnow's attorney's argument that she met Listing 14.09 due to fibromyalgia was "extremely well-thought-out," and that he would need a medical expert opinion to determine if Ms. Kemnow met that Listing. (Tr. at 40). However, the ALJ did not obtain a medical expert opinion or order a consultative examination, and he compounded that problem by not

discussing fibromyalgia or Listing 14.09 at Step Three of his analysis.[3] (Tr. at 121-122).

The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). That is, if an adult is not actually working and his impairment matches or is equivalent to a Listing, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work. *Id*.

The determination of medical equivalence [meeting a Listing] "is made based on medical evidence, supported by acceptable laboratory and clinical diagnostic techniques. In addition, the ALJ will consider medical opinions of designated medical or psychological consultants." See *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003) (reversing denial of benefits because substantial evidence showed that claimant met a Listing).

The Step Three Listings review must be sufficient for the Court to conclude that the ALJ fulfilled his duty at Step Three. When an ALJ fails entirely to discuss a

---

[3] As Ms. Kemnow points out, the ALJ must have considered some evidence of fibromyalgia, sufficient to require a medical opinion about it, because he said just that at the hearing. Thus, a failure to even mention the illness at Step Three is surprising.

relevant Listing, reversal is required. In particular, as cases from this district have held, when the court is unable to determine how the ALJ evaluated fibromyalgia at Step Three (or if he did at all), the matter must be remanded. *Rosencrans v. Saul*, 2020 U.S. Dist. LEXIS 219774 at *7-8 (E.D. Ark. Nov. 23, 2020). Eighth Circuit district courts have consistently interpreted the Administration's rules to require as much of the ALJ. See e.g. *Jockish v. Colvin*, 2016 U.S. Dist. LEXIS 39266 (D.S.D. Mar. 25, 2016); *Sunderman v. Colvin*, 2017 U.S. Dist. LEXIS 15155 (D.S.D. Feb. 3, 2017); *Wheeler v. Berryhill*, 2017 U.S. Dist. LEXIS 156306 (D.S.D. Sept. 26, 2017).

The Listings prong of disability benefits determinations is fundamental, and an ALJ must "show his work."[4] *Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (reversal warranted because the ALJ's decision does not mention Listing 12.05C, nor does it otherwise indicate that he considered the Listing to be relevant to Chunn's disability claim); *Zuhlke v. Berryhill*, 2019 U.S. Dist. LEXIS 127265 (D. Neb. July 31, 2019) (reversing for failure to conduct a Listings equivalence analysis); *Mann v. Colvin*, 100 F.Supp.3d (N.D. Iowa 2015) (reversing for inadequate Listings discussion).

---

[4] *Smajic v. Berryhill*, 2019 U.S. Dist. LEXIS 6240 at *11-12 (E.D. Mo. Jan. 14, 2019) (ALJ must "show his work" to provide the Court an opportunity for meaningful review).

It is not for the Court to decide if Ms. Kemnow's fibromyalgia was disabling, or even if it met Listing 14.09; the review is limited to whether the ALJ's decision is supported by substantial evidence. In this case, the lack of discussion of fibromyalgia at Step Three impedes this Court's review, making reversal necessary.

**VI.   Conclusion:**

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ erred at Step Three.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review.

IT IS SO ORDERED this 22nd day of March, 2022.

_____
UNITED STATES MAGISTRATE JUDGE